IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRYAN D. CANNON, 300397, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-CV-532-ECM |
| ) | [WO] |
| ) | |
| L. BERNARD SMITHHART and ) | |
| RASHAWN F. HARRIS, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Bryan D. Cannon, an inmate confined at the Bullock Correctional Facility on a conviction for murder imposed upon him by the Circuit Court of Mobile County, Alabama.[1]  Cannon names as defendants L. Bernard Smithhart, a judge for the Circuit Court of Bullock County, Alabama, and RaShawn F. Harris, the Circuit Clerk of Bullock County.

In the complaint, Cannon complains that the defendants denied him access to the court, deprived him of due process, and denied him equal protection in processing his

---

[1] The Clerk stamped the complaint "received" on May 24, 2018.  Cannon, however, executed the complaint on May 21, 2018, Doc. 1 at 20, and this is the earliest date he could have placed the complaint in the prison's mail system.  A *pro se* inmate's complaint is deemed to have been filed on the date it is delivered to jail officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271–72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  Thus, the court considers May 21, 2018 to be the date of filing.

state petition for writ of habeas corpus.[2] Specifically, in support of his due process and access to court claims, Cannon argues that the defendants delayed service of the state habeas petition on the named respondent, Warden Michael Strickland, due to Strickland's change of address from Bullock to Ventress when the court should have served Strickland by "leav[ing] said petition at the place of [Cannon's] imprisonment with the person who has charge currently of the petitioner. The court [instead] redirected the Sheriff to another state prison[—Ventress—]where Petitioner is not imprisoned[.]" Doc. 1 at 15. Cannon also alleges that Ms. Harris failed to provide him certified copies of "documents from the court of any lawful actions [as] mandated by the [state] rules of court relative to all orders" issued, and that she only provided him courtesy copies of documents showing he had been granted leave to proceed *in forma pauperis* and Warden Strickland had not been served at Bullock. Doc. 1 at 13. Cannon maintains that the alleged failure to serve him copies of these documents deprived him of due process and violated his right to "equal protection of the law based on race as . . . said actions has an adverse effect on predominately black litigants as the ADOC houses predominately black convicted prisoners." Doc. 1 at 13.[3] Finally, Cannon asserts that the defendants conspired to violate his due process rights and engaged in *ex parte* communications

---

[2] The court takes judicial notice of the case action summaries for Cannon's pending habeas action as maintained on the Alabama Trial Court System, hosted at www.alacourt.com. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (taking judicial notice of a state's online judicial system).

[3] A review of the case action summary of the Circuit Court of Bullock County indicates that the only actual orders or documents entered by the court prior to Cannon's filing of this civil action addressed the state court's initial directive to serve the respondent, the granting of *in forma pauperis* status, and a general notice indicating the Clerk sent correspondence to Cannon on May 10, 2018. Cannon concedes that he received a copy of Judge Smithhart's *in forma pauperis* order, a copy of the document indicating the first attempt to serve the respondent at Bullock was returned unexecuted, and correspondence from the Clerk within a few days after May 10, 2018. Docs. 1-2, 1-3 & 1-4.

prohibited by state and federal law. Cannon seeks monetary damages, injunctive relief in the form of bail during the pendency of his state habeas proceedings, and issuance of a declaratory judgement against the defendants. Doc. 1 at 18–19.

Upon review of the complaint, the court concludes that this case is due to be dismissed prior to service of process in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).[4]

## II.  DISCUSSION

### A.  Judge L. Bernard Smithhart and Circuit Clerk RaShawn F. Harris

Cannon alleges that Judge Smithhart violated his constitutional rights and acted in violation of state law and the Alabama Canons of Judicial Ethics when he issued orders to effectuate service of the state habeas petition on Warden Michael Strickland, allowed *ex parte* communications with the Clerk of the Court, and delayed "properly screening the writ, processing the writ and . . . determining the constitutionality of the judgment [of conviction challenged in] the petition." Doc. 1 at 14. Cannon also argues that Ms. Harris acted in violation of state law and his constitutional rights when she followed the orders issued by Judge Smithhart regarding the manner in which to serve Warden Strickland. Doc. 1 at 15. In addition, Cannon maintains Ms. Harris denied him copies of orders and documents relevant to his pending state habeas action in violation of his equal protection

---

[4] The court required Cannon to pay an initial partial filing and granted him leave to proceed *in forma pauperis* in all other respects. Doc. 5. Cannon submitted the requisite partial filing fee on July 27, 2018. Doc. 8. Regardless of payment of an initial partial filing fee, a prisoner will have his complaint screened pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss the complaint prior to service of process if it determines that the claims raised therein are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

rights due to his race because these actions "predominately [impact] black litigants as the ADOC houses predominately black convicted prisoners." Doc. 1 at 13. The claims of constitutional violations by Judge Smithhart and Ms. Harris entitle Cannon to no relief in this cause of action.

### 1. *Judicial Immunity*

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (internal citation omitted). "Judges are entitled to absolute immunity from suits for acts performed while they are acting in their judicial capacity unless they acted in complete absence of all jurisdiction." *Allen v. Florida*, F. App'x 841, 843 (11th Cir. 2012). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal quotation marks and citation omitted); *Mireles*, 502 U.S. at 11 (holding that "[j]udicial immunity is not overcome by allegations of bad faith or malice"); *Allen*, 458 F. App'x at 843 (same). "[T]he relevant inquiry is the nature and function of the act, not the act itself." *Mireles*, 502 U.S. at 12 (internal quotation marks and citation omitted). "This immunity applies to proceedings [brought] under 42 U.S.C. § 1983." *Wahl v. McIver*, 773 F.2d 1169, 1172 (5th Cir. 1981).

All of the allegations made by Cannon against Judge Smithhart emanate from actions taken in his judicial capacity during state-court proceedings over which he had

4

jurisdiction. Judge Smithhart is absolutely immune from civil liability for acts taken pursuant to his judicial authority. *Hyland v. Kolhage*, 267 F. App'x 836, 840–41 (11th Cir. 2008) (holding that because judge's "actions were taken within his judicial capacity and he did not act in the absence of all jurisdiction [in altering minutes of sentencing hearing after completion of such hearing], he was entitled to absolute judicial immunity"); *Stump*, 435 U.S. at 356 (holding that where judge was not acting in the "clear absence of all jurisdiction" he is entitled to immunity even if Plaintiff alleges the action taken was erroneous, malicious or without authority). Consequently, Cannon's claims against Judge Smithhart are "based on an indisputably meritless legal theory" and are therefore subject to summary dismissal in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

To the extent Cannon seeks relief from Ms. Harris regarding service of the habeas petition and provision of copies of documents in accordance with orders issued by Judge Smithhart or standing rules of the circuit court, these claims are also barred by judicial immunity. *See Erazo v. Macon-Bibb Cnty. Juvenile Ct., et al.*, 2017 WL 1854687, *4 (M.D. Ga., May 8, 2017). It is inherent that "[c]ourt clerks enjoy a narrower ambit of immunity than judges." *Hyland*, 267 F. App'x at 842 (internal quotation marks and citation omitted). However, "[n]onjudicial officials have absolute immunity for their duties that are integrally related to the judicial process." *Jenkins v. Clerk of Ct., U.S. Dist. Court, So. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005). Cannon's claims against Harris are based on her attempting service of the habeas petition as ordered by

Judge Smithhart and her alleged refusal to provide him copies of orders, documents, correspondence and docket entries entered in his habeas case. "Each of these actions constitutes an integral part of the judicial process and [Harris'] actions are protected by judicial immunity." *Erazo*, 2017 WL 1854687 at *4; *see Essell v. Carter*, 450 F. App'x 691, 691 (9th Cir. 2011) (holding that clerk of court is immune from suit for failure to respond to letter and file motions); *In re Castillo*, 297 F.3d 940, 951 (9th Cir. 2002) (holding that clerk of court is immune from suit for failure to give notice of hearing). In light of the foregoing, the claims against RaShawn Harris are due to be summarily dismissed pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

Furthermore, as discussed below, even if Cannon's access to court, due process, equal protection, *ex parte*, and conspiracy claims are not barred by judicial immunity, these claims fail to provide a basis for relief.

### 2. *Access to Court and Due Process*

On April 16, 2018, the Circuit Court of Bullock County filed the petition for writ of habeas corpus submitted by Cannon. Judge Smithhart granted Cannon leave to proceed *in forma pauperis* on this same date. Doc. 1-2. On May 24, 2018, the court perfected service of the habeas petition on the named respondent, Warden Michael Strickland, at Ventress. On May 31, 2018, Strickland filed a motion for change of venue seeking transfer of the habeas petition to the Circuit Court of Mobile County for review and disposition. On June 12, 2018, Cannon filed an objection to this motion. On June 13, 2018, the court granted the motion for change of venue and transferred the habeas

action to the Circuit Court of Mobile County. On June 22, 2018, the Circuit Court of Mobile County filed Cannon's petition for writ of habeas corpus. The petition is now pending before that court with a response to the habeas petition due from the District Attorney for Mobile County on or before September 14, 2018.

The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury[.]" *Lewis*, 518 U.S. at 349. The Court similarly determined that absent an actual injury no claim existed to confer standing. *Id*. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. *Id.* at 356. "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Id.* Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement." *Id*. at 356–57.

It is clear to the court that Cannon has received access to the state courts with respect to the filing of his petition for writ of habeas corpus. Each of the state courts filed the petition, Cannon was granted leave to proceed *in forma pauperis* and the state habeas petition is now pending before the Circuit Court of Mobile County for review. Moreover, Cannon may continue to pursue the claims raised in the state petition before that court. Thus, the actions undertaken by the Circuit Court of Bullock County did not adversely affect or improperly impede Cannon's ability to pursue his habeas claims before the state courts. *See Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (holding that an access to courts claim fails where no actual injury occurred); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (holding that inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage"). Since Cannon may proceed on his claims in the Circuit Court of Mobile County, it is likewise clear that the challenged actions have not deprived him of due process.

### 3. *Equal Protection*

Cannon alleges that the actions of Ms. Harris in refusing him copies of documents deprived him of equal protection based on his race "because said actions ha[d] an adverse effect on predominately black inmates as the ADOC houses predominately black convicted prisoners." Doc. 1 at 13. This allegation fails to state a claim on which relief may be granted. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Despite the tendency of all rights to declare themselves absolute to their logical

extreme, there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment does not require absolute equality or precisely equal advantages[.]" *Ross v. Moffitt*, 417 U.S. 600, 611–12 (1974) (internal quotation marks omitted); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) (holding that "[t]he Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally"). In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec., Dept. of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (internal citations omitted). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977). Rather, "[p]roof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* "Discriminatory purpose . . . implies that the decision maker . . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal quotation marks, footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers,

9

rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Cannon fails to identify any similarly situated inmate who received differential favorable treatment from Harris. Thus, the instant "equal protection claim necessarily fails first because [Cannon] has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. The equal protection claim also fails because the factual basis for the claim—that the actions of Ms. Harris will have a greater impact on black litigants solely because they comprise a majority of the inmate population—does not in any way indicate that she acted with invidious discrimination towards Cannon due to his race, and instead, merely asserts a potential disproportional impact on black litigants due to their numerical majority in the state prison system. The mere fact that Ms. Harris actions could have a disproportional impact on black inmates who file lawsuits because these inmates outnumber inmates of other races and thus may file more lawsuits does not set forth a cognizable equal protection claim. *See Village of Arlington Heights*, 429 U.S. at 264–65.

### 4. *Ex Parte Communications*

The only communications identified in the complaint are those between Cannon and Ms. Harris whereby Cannon contacted Ms. Harris seeking information regarding the date the court received his habeas petition, the status of his *in forma pauperis* application, information on filings in his case, and the reason for a delay in service of the petition on Warden Strickland. Doc. 1 at 6–7. Harris responded to Cannon's initial requests advising

that: (1) she did not remember the precise day she signed for the petition; (2) Cannon would not be required to pay a filing fee because his application for *in forma pauperis* had been granted; (3) the habeas petition was filed on April 16, 2018; (4) the court had directed the Sheriff to serve Warden Michael Strickland at the address provided by Cannon; and (5) Warden Strickland would have 30 days after service to respond to the habeas petition. Doc. 1 at 6–7. In a subsequent response, Harris provided Cannon the following information: (1) Warden Strickland was no longer at Bullock and left no forwarding address; (2) the Sheriff returned the initial service materials to the court because Strickland was not at Bullock; and (3) she was awaiting further direction from the court on how to proceed with service. Doc 1 at 7–8. In later correspondence, Harris informed Cannon "that the court has redirected the Sheriff to serve said defendant/respondent at Ventress Correctional Facility in Barbour County[.]" Doc. 1 at 8. With respect to Cannon's request for orders, actions or correspondence, Ms. Harris advised that although the Circuit Court of Bullock County does not usually provide copies of all docket entries "as a courtesy she will send Petitioner something." Doc. 1 at 8 (internal quotation marks omitted). It is clear that the communications between Cannon and Ms. Harris regarding the status of his pending habeas petition do not constitute improper *ex parte* communications as they did not address any substantive matters and no party gained any advantage due to these communications. *Cf.* Code of Conduct for United States Judges, Canon 3(A)(4)(b).

### 5. *Conspiracy*

Cannon makes the conclusory and specious allegation that the defendants conspired to violate his constitutional rights. To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy . . . . [T]he linchpin for conspiracy is agreement[]." *Bailey v. Bd. of Cnty. Comm. of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied*, 506 U.S. 832 (1992) (internal quotation marks and citation omitted). In order for a plaintiff "to establish the understanding or willful participation required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants[.]" *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283–84 (11th 2002) (internal quotation marks omitted). Merely "stringing together" acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992); *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984) (holding that a vague and conclusory allegation of a conspiracy fails to state a claim upon which relief can be granted).

Other than his conclusory allegation of a conspiracy, Cannon presents nothing which suggests the existence of an actual conspiracy nor can this court discern any evidence which would indicate that the defendants entered into a conspiracy to deprive Cannon of his constitutional rights. In addition, the court has found no violations of Cannon's constitutional rights with respect to the manner in which the defendants

handled his state habeas petition. Thus, the allegation of a conspiracy is insufficient to support a claim for relief in this 42 U.S.C. § 1983 action. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556–57.

**B.    Supplemental Jurisdiction**

To the extent Cannon seeks relief from this court on pendent state claims regarding alleged violations of state law and state ethical canons, he is entitled to no relief. Review of any pendent claim arising under state law or state judicial canons is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, the court concludes that exercise of supplemental jurisdiction over Cannon's referenced state claims is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction. To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.

*L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (citations and internal quotations omitted). The exercise of supplemental jurisdiction is completely discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son*, 735 F.2d at 428.

Since the federal claims presented by Cannon provide no basis for relief in the instant cause of action, the court concludes that the pendent state claims are due to be

dismissed. *Gibbs*, 383 U.S. at 726 (holding that if the federal claims are dismissed prior to trial the state claims should be dismissed as well); *see also Ray v. Tenn. Valley Auth.*, 677 F.2d 818 (11th Cir. 1982). The court therefore declines to exercise supplemental jurisdiction over the state claims alleging legal and ethical violations and makes no determination with respect to the merits of these claims.

### III. CONCLUSION

Accordingly, it is the recommendation of the Magistrate Judge that:

1. Plaintiff's claims against Judge L. Bernard Smithhart and Clerk RaShawn F. Harris be DISMISSED with prejudice prior to service of process pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

2. Plaintiff's pendent state claims be dismissed without prejudice to the rights of the plaintiff to seek relief on these claims before the appropriate state tribunal.

3. This case be summarily dismissed.

On or before **September 14, 2018**, Plaintiff may file objections to the Recommendation. Plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal

the district Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

    DONE this 31st day of August, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE